J-A11010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LITTLE WASHINGTON FABRICATORS, INC. AND LITTLE WASHINGTON FAB SERVICES, LLC F/K/A JS FAB SERVICES, LLC | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| | : : | No. 1392 MDA 2024 |
| JONAS STOLTZFUS AND STOLTZFUS WELDING AND RENTALS, LLC | : : : : | |
| APPEAL OF: STOLTZFUS WELDING AND RENTALS, LLC | : : | |

Appeal from the Order Entered August 19, 2024
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-22-06082

BEFORE:   MURRAY, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:               **FILED: MAY 22, 2025**

Stoltzfus Welding and Rentals, LLC (Appellant), appeals from the orders entering default judgment as to liability, and summary judgment as to damages, against Appellant and Jonas Stoltzfus (Jonas), and in favor of Little Washington Fabricators, Inc. (LWFI), and Little Washington Fab Services, LLC (LWFS) (collectively, Plaintiffs).  We affirm.

The trial court summarized the factual and procedural background:

[LWFI] is a Pennsylvania corporation engaged in the business of structural steel design, fabrication[,] and installation, including but not limited to custom stairway fabrication, railings and custom

---

[*] Former Justice specially assigned to the Superior Court.

components for commercial structures[,] and steel construction. [LWFS] is a payroll and administrative company servicing LWFI for payment of wages to its Amish employees. [Jonas] is a former employee, officer and shareholder in LWFI, having held the title of Vice President of Operations. [Jonas] also formed LWFS and was its sole owner. [Appellant], which is owned by [Jonas's] brother, Elmer Stoltzfus [(Elmer)], is a Pennsylvania limited liability company and [a] competitor of LWFI.

During his tenure as Vice President of Operations for LWFI, [Jonas] was responsible for sales, marketing, estimating, purchasing, production, fabrication, installation, billing, accounts receivable, and human resources. In the performance of his duties, he developed relationships with LWFI's customers, vendors, subcontractors and employees, which he would not have had but for his relationship with LWFI. Further, to perform his duties, [Jonas] had access to, and used, essential and highly confidential customer and business information[;] and, as a high-level employee, an officer, and a shareholder, he had access to customer lists, profit margins and overhead calculations, bid information, and long term business plans and planning, among other confidential, proprietary, and trade secret information. All of this information was used in LWFI's business to bid and conduct jobs, as well as sell products, across the country.

LWFI alleged that access to confidential information was restricted to ownership and management. Further, the confidential information was neither generally known, nor reasonably ascertainable by the general public. Before being provided access to the confidential information, employees were required to execute non-competition and confidentiality agreements, and access to the information was limited through password protection and other means. Employees were informed that certain information was confidential, and the company took other steps to protect the dissemination and use of the information. [Jonas], in fact, did sign non-competition and confidentiality agreements, as well as a shareholder agreement[,] which included provisions related to non-disclosure of information and non-use and non-retention of files and records.

In [their] complaint, [Plaintiffs] stated that, in late 2021, [LWFI] learned that [Jonas] had engaged in unacceptable conduct and mismanagement, which resulted in significant expense to the company as well as several lawsuits being filed against the

company. While [Jonas] was warned of the consequences of his behavior, [Plaintiffs alleged] that he did not modify his behavior and was, as a consequence, terminated as of December 31, 2021. At that time, [Jonas] sold all ownership interest in LWFS to LWFI. [Jonas] continued to work for LWFI for a period of several months as an independent contractor to wind up matters in which he was involved. During this time, he worked remotely and had no access to the company's confidential information.

After his termination, [Jonas] signed a separation and stock redemption agreement which bound him to the terms of the shareholder agreement he had previously signed[,] and further stated that he would not attempt to induce employees of the company to leave or to interfere in the company's business relationships with its customers, suppliers, or licensees.

[Plaintiffs] alleged that, notwithstanding his agreements, after leaving [LWFI, Jonas] accepted a position with [Appellant]. In that new position, [Jonas] began to solicit business from LWFI customers on behalf of his new employer. LWFI alleged that it lost existing customers, as well as a number of jobs, as a result of being underbid by [Appellant]. Plaintiffs contended that [Appellant] was able to underbid them due to [Jonas] using LWFI's confidential information, which he had retained or acquired through family members who also worked for [LWFI]. Plaintiffs further alleged that [Jonas] solicited an employee of LWFI … to join [Appellant,] and that employee did, in fact[,] leave LWFI and join [Appellant]. Plaintiffs stated that, as a result of [Jonas's] conduct, LWFI was compelled to file for bankruptcy on March 22, 2022.

Plaintiffs stated that, on or about April 14, 2022, having discovered [Jonas's] breach of the Shareholder and Redemption Agreements, LWFI's counsel sent [Jonas] a letter reminding him of his post-employment covenants and demanding that he cease and desist from all violative conduct, return all LWFI property and provide an accounting of any LWFI funds, property or employees that he used for his personal benefit since January 1, 2017. A cease and desist letter was also sent to [Appellant]. [Jonas] agreed to resign from [Appellant] and executed an agreement and limited release further reaffirming and reinforcing his post-employment restrictions under the Shareholder and Redemption Agreements. Although [Jonas] resigned from [Appellant], it became evident to LWFI that [Jonas] continued to engage in direct

competition with LWFI[,] in violation of his agreement and limited release.

Plaintiffs filed a nine-count complaint [against Jonas and Appellant] on October 3, 2022, alleging breach of contract, tortious interference with contract, violation of the Pennsylvania Uniform Trade Secrets Act [(PUTSA)],[1] breach of fiduciary duty and duty of loyalty, conversion, unfair competition, fraud and intentional misrepresentation, and negligent misrepresentation.[2] [In addition to monetary damages, attorney's fees, and punitive damages,] Plaintiffs asked that … [Jonas] … be enjoined from directly or indirectly soliciting any clients or employees of LWFI and from using, in any fashion and in any manner, LWFI's confidential information and trade secrets in the future….

Trial Court Opinion, 8/19/24, at 1-5 (footnotes in original omitted; footnotes added).

The trial court detailed the ensuing procedure:

[Jonas], through counsel, filed an answer and new matter on December 1, 2022. He denied the allegations against him and, in his new matter, asserted [various affirmative defenses]…. Plaintiffs filed their reply to new matter on December 5, 2022.

[Appellant did not timely answer the complaint.] On December 7, 2022, Plaintiffs filed a praecipe for default judgment against [Appellant] on Counts III, IV, and VII of the complaint. Default judgment was entered that same day[,] with [Appellant] being advised the amount of damages and the appropriateness of any equitable relief would be assessed at trial. [Appellant], through counsel, filed a petition to open default judgment on December 22, 2022, and, upon joint stipulation of counsel, default judgment was opened by order dated February 10, 2023. …

---

[1] *See* 12 Pa.C.S.A. §§ 5301-5308.

[2] Plaintiffs asserted a claim against Appellant for tortious interference with contract (Count III), and against both Appellant and Jonas for violation of the PUTSA (Count IV) and unfair competition (Count VII). Plaintiffs asserted the remaining claims against Jonas only. *See* Complaint, 10/3/22.

[Appellant filed an] answer and new matter [on] February 27, 2023. [Appellant] denied the allegations against it and, in [its] new matter, asserted [various defenses.] … Plaintiffs filed their reply to new matter on March 13, 2023.

Trial Court Opinion, 8/19/24, at 5-6 (footnote added).

On January 9, 2023, Plaintiffs served Jonas with interrogatories and requests for production of documents. *See* Plaintiffs' Motion to Compel Discovery, 7/21/23, at 2-4. On February 22, 2023, Plaintiffs served Appellant with interrogatories and requests for production of documents. *Id.* at 5-6. Neither Jonas nor Appellant responded to Plaintiffs' discovery requests. *Id.* at 2-6.

The trial court summarized what next transpired:

On April 18, 2023, counsel for [Jonas] filed a petition to withdraw as counsel due to fundamental disagreements with [Jonas] involving the representation and defense of this litigation. Counsel requested a thirty-day stay to allow [Jonas] to obtain new counsel. Plaintiffs filed [a response] on April 28, 2023, opposing the request on the grounds that it would have an impact on LWFI's ability to comply with its Plan of Reorganization as confirmed by the United States Bankruptcy Court for the Eastern District of Pennsylvania. Plaintiffs explained that LWFI must give periodic status reports to the Bankruptcy Court regarding this matter, as the ultimate outcome of this matter greatly impacts the 59 creditors in LWFI's bankruptcy. Further, Plaintiffs expressed concern that counsel's withdrawal would cause additional delays in discovery[,] as [Jonas's and Appellant's] discovery responses were three months overdue at that point[,] and a motion to compel had been filed. Counsel for [Jonas] subsequently advised the court that, following his petition to withdraw, he had been discharged by his client. By order dated June 1, 2023, counsel for [Jonas] was permitted to withdraw effective immediately. A thirty-day stay was imposed pending [Jonas] identifying replacement counsel. [Jonas did not obtain new counsel.]

On July 21, 2023, the court entered an order granting Plaintiffs' motion to compel discovery responses as to [Jonas]. [Jonas] was given seven days to file his responses, such responses to include any relevant and non-privileged documents and/or other information in the possession of [Jonas's] former counsel. By a separate order [entered] the same day, [Appellant] was directed to supply its discovery responses within fourteen days.

On August 4, 2023, counsel for [Appellant] filed a petition to withdraw as counsel[,] stating that his client had failed to respond to requests for assistance and to fulfill the client's responsibilities in connection with the representation. Counsel stated that [Appellant] had been unresponsive over several months, and that, accordingly, counsel's representation … had become unreasonably difficult and would place a financial burden on [counsel]. Counsel stated that [Appellant] had been warned that counsel would withdraw if [Appellant] did not meet its obligations. By order dated August 9, 2023, counsel was permitted to withdraw. [Counsel] filed his praecipe to withdraw on August 18, 2023.

By order dated August 18, 2023, the court granted Plaintiffs' motion for contempt, sanctions, and to compel discovery against [Jonas]. [Jonas] was held in civil contempt for violati[ng] the court's order of July 21, 2023, and was directed to produce to Plaintiffs' counsel all documents and other items responsive to Plaintiffs' discovery requests, including written responses, within ten days…. The order further stated that, should [Jonas] fail to comply, Plaintiffs may file a motion for default judgment, as to liability only, against him for Counts I, II, and IV-IX of the complaint. [Jonas] was directed to pay Plaintiffs' attorney's fees with respect to the contempt motion in the amount of $1,243.00. [Jonas's] prior counsel was directed to produce to Plaintiffs' counsel all relevant and non-privileged documents and/or other information related to this matter in [Jonas's prior counsel's] possession within ten days….

[By a] separate order, also dated August 18, 2023, [the trial court] granted Plaintiffs' motion for contempt, sanctions, and to compel discovery [from,] and legal representation [for

Appellant].[3,4] [Appellant] was held in civil contempt for violati[ng] the [trial] court's order of July 21, 2023, and [Appellant's] prior counsel was directed to produce to Plaintiffs' counsel all relevant and non-privileged documents and/or other information related to this matter in [Appellant's prior counsel's] possession within ten days…. [Appellant] was also directed to pay Plaintiffs' attorney's fees related to the current discovery dispute in the amount of $1,881.00 within ten days. Additionally, [Appellant] was directed to obtain new counsel and to have counsel enter [an] appearance within thirty days. In the event [Appellant] did not obtain new counsel and have [counsel] enter [an] appearance, [the order permitted Plaintiffs] to file a motion for entry of default judgment, as to liability only, as to Count III of the complaint.

Trial Court Opinion, 8/19/24, at 6-8 (footnotes added).

Neither Jonas nor Appellant complied with the August 18, 2023, orders. Appellant did not obtain new counsel. On September 29, 2023, Plaintiffs moved for the entry of default judgment as a sanction under Pa.R.C.P. 4019(c)(3).[5] According to Plaintiffs, Jonas and Elmer appeared during the motion presentation and handed the judge and Plaintiffs' counsel copies of a

---

[3] Appellant filed no response to Plaintiffs' motion.

[4] *See Walacavage v. Excell 2000, Inc.*, 480 A.2d 281, 284 (Pa. Super. 1984) (stating "a corporation may appear in court only through an attorney at law admitted to practice before the court."); *see also David R. Nicholson, Builder, LLC v. Jablonski*, 163 A.3d 1048, 1056 (Pa. 2017) (extending the rule in *Walacavage* to apply to limited liability companies), *overruled other grounds in part by Bisher v Lehigh Valley Health Network, Inc.*, 265 A.3d 383 (Pa. 2021).

[5] Rule 4019 provides that "[t]he court may, on motion, make an appropriate order if," *inter alia*, "a party … fails to make discovery or to obey an order of court respecting discovery." Pa.R.C.P. 4019(a)(1)(viii). "The court, when acting under subdivision (a) of this rule, may make … an order entering a judgment of *non pros* or by default against the disobedient party…." **Id.** (c)(3).

"Notice," purporting to challenge the court's jurisdiction. *See* Plaintiffs' Brief in Opposition to Motion for Stay Pending Appeal, 10/11/24, at 5-6; *see also id.*, Exhibit C. The "Notice" stated as follows:

> By **SPECIAL APPEARANCE**, **TAKE NOTICE**, <u>JONAS STOLTZFUS</u> and <u>ELMER STOLTZFUS</u>, hereby challenge jurisdiction. We do not understand any of this.
>
> What we do understand is that these actions/claims are fraudulent. If you or your clients continue to cause us undue harm and attempt to steal monies from us, we have no choice but to go public with our experiences, and file claims against **ALL** parties making false claims and committing fraud for the following amount of $10,000,000.00 (TEN MILLION DOLLARS) paid to our Church.
>
> We are Amish, we stand by our beliefs, and [are] bound by church law. We do not accept nor wish to be involved in fraudulent activity based on these strong religious beliefs.

*Id.*, Exhibit C (emphasis in original). The "Notice" bears the signatures of Jonas and Elmer, with the latter purportedly signing on Appellant's behalf. *Id.*, Exhibit C. According to Plaintiffs, the trial court informed Jonas and Elmer "that simply handing out this piece of paper during the presentation of [Plaintiffs' motion] was improper and would have no impact on the proceedings that day." *Id.* at 6. Plaintiffs relate that Jonas and Elmer thereafter attempted to file the "Notice" with the prothonotary, *see id.*, but our review discloses it was never docketed.

The trial court summarized the ensuing proceedings:

By order dated September 29, 2023, [Jonas] was held in civil contempt for violating the court's order of August 18, 2023. As a sanction, default judgment, as to liability only, was entered against [Jonas] on Counts I, II, [and] IV-IX of Plaintiffs' complaint.

- 8 -

Further, Jonas … was directed to pay Plaintiffs' attorney's fees related to the current discovery dispute in the amount of $586.80, as well as the attorney's fees in the amount of $1,254.00 contained in the order of August 18, 2023, within five days…. A second order entered on the same date held [Appellant] in contempt for violating the order of August 18, 2023, and, as a sanction, default judgment, as to liability only, was entered against [Appellant] on Count III of Plaintiffs' complaint. [Appellant] was further directed to pay the $1,881.00 of attorney's fees previously ordered and an additional $880.02 in attorney's fees within five days…. [Neither Jonas nor Appellant complied with the September 29, 2023, orders.]

On March 27, 2024, Plaintiff[s] filed a motion for entry of default judgment [as to liability] against [Appellant on] Counts IV and VII, and for summary judgment as to [Jonas and Appellant] as to damages [on all counts]. …. Plaintiff[s] asserted that, despite the court's orders of August 18 and September 29, 2023, [Jonas and Appellant] had continued in their non-compliance with discovery and had failed to pay court-ordered attorney's fees. Further, Plaintiff[s] stated that [Appellant] had still not obtained replacement counsel even though, as an LLC, it could only appear in this matter through an attorney. Accordingly, Plaintiff[s] asserted that it was appropriate to enter default judgment against [Appellant] for the two remaining counts against it—Count IV (violation of the Pennsylvania Uniform Trade Secrets Act) and Count VII (unfair competition). Plaintiff[s] contended that, once default judgment was entered, the only question remaining would be damages[. Plaintiffs argued they] would be entitled to summary judgment on damages against both [Jonas and Appellant]. Plaintiff[s] asserted that [LWFI] had suffered damages in the amount of $358,708.66 … attributable to [Jonas] for the claim for conversion in Count VI of the complaint.

Further, Plaintiff[s] asserted that [Jonas and Appellant] were jointly and severally liable for damages in the amount of $852,302.00 to LWFI, not including recoverable attorney's fees and expenses, based on their violations of the [PUTSA] and their unfair competition. In support of this amount, Plaintiff identified five specific jobs it lost as a result of having been underbid by [Appellant], and from which it would have realized profits of $621,500.00[,] but for [Jonas's and Appellant's] interference …[,] use of LWFI's confidential and trade secret information[,] and other improper conduct. In addition to the five lost bids, Plaintiff

- 9 -

alleged that [Jonas], on behalf of [Appellant], continued to knowingly solicit business from, and bid on projects for, other customers of LWFI in direct violation of [Jonas's] post-employment restrictions. LWFI identified twelve projects and averred that, but for [Jonas's and Appellant's] improper conduct, interference, and use of LWFI's confidential and trade secret information, LWFI would have had a full and fair opportunity to be awarded these twelve projects. LWFI reasoned that, given its typical profit margin of 18%, LWFI could have reasonably expected to make $230,802.00 on these other projects but for [Jonas's and Appellant's] conduct.

Additionally, [Plaintiffs] noted that the court had already ordered [Jonas and Appellant] to pay a total of $1,840.80 and $2,761.02, respectively, in attorney's fees pursuant to [the trial c]ourt's September 29, 2023, orders, but that none of the ordered payments had been made. Plaintiff[s] further stated that, as of the date of its motion, [they] had incurred a total of $83,971.55 in attorney's fees and expenses related to this action. [Plaintiffs] asserted that [they are] entitled to attorney's fees[,] as all of the claims listed above are rooted in [Jonas's and Appellant's] willful and malicious conduct under the [PUTSA]. [*See* 12 Pa.C.S.A. § 5305 (providing a "court may award reasonable attorney fees, expenses and costs to the prevailing party" if, *inter alia*, "willful and malicious appropriation exists.").] Plaintiff[s] estimated that eighty percent (80%) of the attorney's fees and expenses incurred in this action related to the conduct that constitutes a violation of the [PUTSA], while the balance related to the conversion and misrepresentation claims asserted against [Jonas]. Therefore, [Plaintiffs argued Jonas and Appellant] are jointly and severally liable to Plaintiff[s] for attorney's fees and expenses in the total amount of $67,140.88 through the date of [its motion for summary judgment], and for eighty percent (80%) of all additional attorney's fees incurred in this matter.

On April 29, 2024, Plaintiffs' counsel sent a letter to the [p]rothonotary stating that more than thirty days had passed since the filing of Plaintiffs' motion for summary judgment without [either Jonas or Appellant] having filed a responsive brief pursuant to [Lancaster County] Local Rule 1035.2(a)(D) and, as such, the motion shall be deemed unopposed. Plaintiffs' letter further noted that, on April 17, 2024, [Jonas and Appellant] filed a "so-called 'Praecipe for Determination and Demand for Jury Trial,'" but that such filing did not constitute a responsive brief and, therefore had

- 10 -

no bearing on Plaintiffs' motion. [Plaintiffs] requested that the motion be forwarded to the assigned judge for disposition.

Trial Court Opinion, 8/19/24, at 8-11 (footnotes omitted).

The certified record includes a two-page document filed by Jonas. The first page, titled "Praecipe for Determination," stated as follows:

Kindly submit the following to the Presiding Judge for determination:

a. There is Fraud being committed upon the Court by Plaintiff (Douglas Howe[, owner of LWFI])

b. Alleged Defendants response in opposition [*sic*]

c. Trial by Jury Demanded.

Praecipe for Determination and Demand for Jury Trial, 5/14/24, at 1. The second page, titled "Jury Trial Demanded," stated as follows:

Alleged Defendants, [Jonas and Appellant,] hereby demand[] a trial by jury of twelve (12) members plus two (2) alternates, tr[ia]l to proceed as long as there are twelve (12) members available. TAKE NOTICE; FRAUD IS BEING COMMITTED ON THE COURT BY PLAINTIFFS AND THEIR COUNSEL.

*Id.* at 2. Jonas's document is dated April 17, 2024, but was docketed on May 14, 2024. Appellant attempted to file a substantially identical document, signed by Elmer on behalf of Appellant, dated April 17, 2024. *See* Appellant's Petition to Open and Motion for Reconsideration, 9/11/24, ¶ 7; *see also id.*, Exhibit A. Appellant's version of the document was not docketed, but Appellant attached a copy as an exhibit to a later motion. *See id.*, Exhibit A. These documents did not mention Plaintiffs' pending motions and did not clearly respond to those motions.

On August 19, 2024, the trial court entered two orders and filed an accompanying opinion. The first order granted Plaintiffs' motion for default judgment as to liability against Appellant on Counts IV and VII. The order entered default judgment "as a sanction for [Appellant's] continued civil contempt of [c]ourt." Order (Default Judgment), 8/19/24. In its opinion, the trial court observed that

> the Pennsylvania Rules of Civil Procedure permit the court to enter default judgment as a sanction for discovery violations. **See** [Pa.R.C.P.] 4019(c)(3). "The nature of a default judgment is to impose responsibility upon a defendant who had the opportunity to defend the claim on the merits but failed to do so." **Allegheny Hydro No. 1 v. American Line Builders, Inc.**, 722 A.2d 189, 195 (Pa. Super. 1998). "The purpose of a default judgment is to speed a cause of action along, preventing a procrastinating defendant from impeding the plaintiff from establishing his claim." **Nardulli v. John Carlo, Inc.**, 417 A.2d 1238, 1241 (Pa. Super. 1979). The Pennsylvania Supreme Court has stated that "where a court imposes a judgment by default against a defendant as a sanction for failure to respond adequately to discovery requests, it is acting well within its discretion and the latitude given it by our Rules of Civil Procedure to enter 'a judgment by default against the disobedient party.'" **Fox v. Gabler**, … 626 A.2d 1141, 1143 ([Pa.] 1993) (citing Pa.R.C.P. 4019(c)(3)). A judgment on the issue of liability entered by the court pursuant to [Rule] 4019(c)(3) as a sanction for a party's refusal to provide discovery as directed by the court is not subject to a petition to open. **Miller Oral Surgery, Inc. v. Dinello**, 493 A.2d 741, 743 (Pa. Super. 1985). In this respect a default judgment entered pursuant to [Rule] 4019(c)(3) is comparable to a judgment entered after hearing. **Id.** …
>
> The record in the present case shows that [Jonas and Appellant,] consistently and over an extended period of time[,] failed to comply with their obligations to respond to requests for discovery, and that default judgment, as to liability only, has already been entered as a sanction against [Jonas] for all counts of the complaint naming him as a defendant. Default judgment as to liability only has also been entered against [Appellant] for

- 12 -

Count III of the complaint as a sanction for violating the court's order to comply with discovery and to obtain replacement counsel. In the more than six months since the court directed [Appellant] to obtain new counsel, there is nothing in the record of this case to indicate that any effort to do so has been made; nor is there anything in the record to indicate, if such an effort has been made, why it has been met with failure.

"[T]he Courts of this Commonwealth have held that artificial entities, such as corporations, may only appear in court through counsel." **Barrett v. M&B Medical Billing, Inc.**, 291 A.3d 371, 376 (Pa. Super. 2022) (citations omitted). At this point, the [trial] court can only look upon the failure of [Appellant] to obtain new counsel so that the litigation may proceed as the willful act of a procrastinating defendant to impede the plaintiff from establishing its claim. To grant Plaintiffs' request for default judgment as to liability only for the remaining counts of the complaint naming [Appellant] as a defendant is to do no more than to satisfy the nature and purpose of default judgment.

Trial Court Opinion, 8/19/24, at 12-13.

The second August 19, 2024, order granted Plaintiffs' motion for summary judgment as to damages against both Jonas and Appellant. The court entered summary judgment against Appellant in the amount of $852,302.00 for damages under Counts III, IV, and VII; $67,140.88 in attorney's fees under the PUTSA; and $2,761.02 in attorney's fees previously imposed by the court's September 29, 2023, order. Order (Summary Judgment), 8/19/24, ¶ 2.[6] In its opinion, the trial court observed that Plaintiffs had

_____

[6] The order also entered summary judgment against Jonas in the amount of $852,302.00 for damages under Counts I, II, IV, V, and VII; $358,708 under Count VI; $178,000 under Counts VIII and IX; $67,140.88 in attorney's fees

*(Footnote Continued Next Page)*

- 13 -

provided numerous exhibits to [their] motion [for summary judgment] which set out the amounts claimed and the manner in which those amounts were calculated, as well as the affidavit of [Douglas] Howe, the owner of LWFI. Neither [Jonas nor Appellant] has offered any evidence to dispute these amounts and, in fact, has offered no response to [Plaintiffs' motion for summary judgment] beyond their "Praecipe for Determination and Demand for Jury Trial."

Trial Court Opinion, 8/19/24, at 15-16 (footnote omitted).

On September 4, 2024, new counsel entered an appearance on Appellant's behalf. On September 11, 2024, Appellant filed a Petition to Open Default Judgment and Motion for Reconsideration of the trial court's August 19, 2024, orders. Appellant averred that Elmer

trusted his brother, Jonas, who came to him after Jonas … and [Appellant] had hired their own attorneys [in the instant matter.] … Jonas told Elmer that he had an organization of lawyers, judges and other individuals who want to see our country go back to its religious core and that [these individuals] would represent Jonas and Elmer going into the future.

Jonas met with these individuals numerous times[,] and they required cash payments[,] which Elmer [] refused to [pay,] but [Elmer] did pay Jonas $4,000.00 that Jonas was supposed to pay to this clandestine organization of lawyers, judges and other individuals[. Thereafter,] every time Jonas and Elmer received filings from [P]laintiffs[, these individuals] would take the filings and tell [Jonas and Elmer] that they would handle it. …

Elmer met with them a few times and Jonas met with them numerous times. It is believed that this clandestine group were sovereign citizens [who] do not believe that the government has any right to tell them what to do.

_____

under the PUTSA; and $1,840.80 in attorney's fees previously imposed by the court's September 29, 2023, order. **See** Order (Summary Judgment), 8/19/24, ¶ 1.

This clandestine group and Jonas [] talked [] Elmer [] into relying upon them[, and stated] that if they filed a Jury Trial Demanded and Praecipe for Determination[,] which Elmer [] did on April 17, 2024, that nothing bad would happen to them. It should be noted that the Praecipe for Determination [states] on the bottom left … "Is[a]iah 40:29," and after Elmer['s signature] … it states "In God I Trust." …

While in retrospect it appears to have been a horrible decision, Elmer [] trusted his little brother Jonas [] and this group of lawyers, judges and other businessmen as their advisors.

Petition to Open and Motion for Reconsideration, 9/11/24, ¶¶ 4-8 (paragraph numbering omitted).

Appellant argued it had now complied with the trial court's directive to retain counsel. *Id.*, ¶ 16. Appellant also maintained that it "is paying" the attorney's fees imposed by the trial court's September 29, 2023, order. *Id.* Appellant further asserted that while its "excuse for not filing a response" to Plaintiffs' motions "is not great, it [filed this Petition to Open] promptly and has an excellent defense on the merits." *Id.*, ¶ 18. Appellant identified numerous arguments on the merits as to both liability and damages which, given our disposition, we need not detail. *See id.*, ¶¶ 20-53; *see also id.*, Exhibit E (Appellant's proposed answer to Plaintiffs' motions for default judgment and summary judgment). Appellant requested that the trial court open the default judgment; reconsider its order granting summary judgment; and "give [Appellant] an opportunity to present evidence and take discovery to prove that it did not use confidential or trade secret information and did not

actually receive eleven of the seventeen bids for which LWFI was awarded damages." *Id.*, ¶ 56.

The trial court did not rule on Appellant's September 11, 2024, Petition to Open and Motion for Reconsideration. On September 17, 2024, Appellant filed timely notices of appeal from the trial court's August 19, 2024, orders.[7, 8] Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) concise statement.

_____

[7] Appellant filed two notices of appeal. The notice docketed at No. 1391 MDA 2024 appealed from the default judgment order, while the notice at the instant docket appealed from the summary judgment order. On December 20, 2024, this Court dismissed *sua sponte* the appeal docketed at No. 1391 MDA 2024 "as duplicative of the appeal at No. 1392 MDA 2024." Order, 12/20/24, 1391 MDA 2024. We noted "[a]ll properly preserved issues sought to be raised at No. 1391 MDA 2024 may be raised in the appeal at No. 1392 MDA 2024." *Id.*

[8] Jonas did not appeal, and the portions of the orders entering judgment against Jonas are not before this Court. Nevertheless, on February 14, 2025, Jonas filed in this Court a "Notice," stating as follows:

> I, Jonas Stoltzfus, hereby waive no rights and intend to defend due to the fraud being committed on my family and I. My wife has been harmed due to the violations of her rights, the freezing of her monies/accounts [etc.,] and [the] extreme duress my family and I are suffering due to these false allegations. I hereby OBJECT to all claims and false proceedings due to the fraud committed upon the court. I also Object to the default judgement(s) due to the fact that I do not understand any of this. Anyone acting as [*sic*], person, party, individual, or entity participating in said fraud shall assume liability for all damages and losses caused to Jonas Stoltzfus and/or all family members thereof, within the protection of United States Constitution and Pennsylvania Constitution. Produce all evidence supporting the allegations made against me, by Douglas How[e]. Identify each record and custodian of said record(s). A JURY TRIAL IS HEREBY DEMANDED!

Notice, 2/14/25.

The trial court entered an order under Rule 1925(a), expressing its intent to rely on its August 19, 2024, opinion.

Appellant identifies a single question for our review:

> Did the Trial Court commit an error as a matter of law or abuse its discretion by failing to grant [Appellant's] Petition to Open Default Judgment and Motion for Reconsideration filed September 11, 2024?

Appellant's Brief at 4.

Initially, we observe that Appellant filed notices of appeal from the trial court's August 19, 2024, orders. However, the sole issue Appellant advances on appeal does not directly challenge those orders. Rather, Appellant purports to challenge the trial court's failure to grant Appellant's September 11, 2024, Petition to Open and Motion for Reconsideration. Appellant advances no argument that the August 19, 2024, orders were erroneous at the time of their entry. ***See generally*** Appellant's Brief. Appellant asserts the Petition to Open and Motion for Reconsideration set forth grounds to open/reconsider the orders, but it does not argue that the entry of either default judgment or summary judgment was unwarranted on the record as it as it existed before the trial court on August 19, 2024. ***Id.***

Appellant argues the trial court should have granted its Petition to Open Default Judgment because (1) it promptly filed the petition; (2) set forth a meritorious defense; and (3) offered a sincere, albeit admittedly "not great," excuse for its previous failure to act. ***Id.*** at 10-13.

Ordinarily, a petition to open default judgment

- 17 -

is an appeal to the equitable powers of the court. The decision to grant or deny a petition to open a default judgment is within the sound discretion of the trial court, and we will not overturn that decision absent a manifest abuse of discretion or error of law.

*Smith v. Morrell Beer Distributors, Inc.*, 29 A.3d 23, 25 (Pa. Super. 2011)

(citation omitted).

> In general, a default judgment may be opened when the moving party establishes three requirements: (1) a prompt filing of a petition to open the default judgment; (2) a meritorious defense; and (3) a reasonable excuse or explanation for its failure to file a responsive pleading.

*Id.* (citation omitted).

However, **"a sanction order entering judgment pursuant to Pa.R.C.P. 4019(c)(3) is not subject to a petition to open**." *Miller Oral Surgery, Inc.*, 493 A.2d at 743 (emphasis added).[9] In *Miller Oral Surgery,*

---

[9] Appellant previously made the same argument before this Court. On November 21, 2024, we directed Appellant to show cause why this appeal should not be quashed on the grounds that the August 19, 2024, default judgment order was not a final, appealable order. *See* Order, 11/21/24 (citing *Est. of Considine v. Wachovia Bank*, 966 A.2d 1148, 1152 (Pa. Super. 2009) (noting default judgment is not instantaneously final, and that the party against whom the judgment was entered typically cannot immediately appeal; rather, the proper procedure is to file with the trial court a petition to strike or open the default judgment)). In response, relying on *Miller Oral Surgery, Inc.*, Appellant argued the order was final because a sanction order entered under Rule 4019(c)(3) is not subject to a petition to open. *See* Appellant's Response to Show-Cause Order, 11/25/24, at 1-2. We discharged the show-cause order and referred the finality issue to the merits panel. *See* Order, 12/20/24. We agree with Appellant that the trial court's August 19, 2024, order entering default judgment under Rule 4019(c)(3) was not subject to a petition to open. *See Miller Oral Surgery, Inc.*, 493 A.2d at 743. Our review discloses that the August 19, 2024, orders were entered simultaneously and, taken together, disposed of all claims and all parties. We

*(Footnote Continued Next Page)*

***Inc.***, we determined "[t]here is no authority in the rules for such a petition, and orderly practice suggests that there should be none. In this respect a default judgment entered pursuant to Pa.R.C.P. 4019(c)(3) is comparable to a judgment entered after a hearing." ***Id.*** (observing "[t]he judgment on the issue of liability in this case … was entered *by the court* pursuant to Pa.R.C.P. 4019(c)(3) as a sanction for appellants' refusal to provide discovery as directed by the court." (italics in original)); ***see also Angelichio v. Myers***, 110 A.3d 1046, 1050 (Pa. Super. 2015) (discussing ***Miller Oral Surgery, Inc.***).

Instantly, the trial court entered the default judgment as a sanction under Rule 4019(c)(3). ***See*** Order (Default Judgment), 8/19/24; Trial Court Opinion, 8/19/24, at 12-13. Therefore, the default judgment was not subject to a petition to open, and the trial court cannot have erred or abused its discretion in failing to grant Appellant's Petition to Open. ***See Miller Oral Surgery, Inc.***, 493 A.2d at 473. It is inapposite whether Appellant's Petition to Open satisfied the requirements generally governing petitions to open. ***See Smith***, 29 A.3d at 25. As Appellant makes no other argument regarding the default judgment order, its appeal affords no grounds for relief from that order.

---

therefore conclude the two orders together constitute a final, appealable order. ***See*** Pa.R.A.P. 341(b)(1) ("A final order … disposes of all claims and of all parties.").

Appellant's argument regarding the August 19, 2024, summary judgment order appears to be derivative of its argument regarding the default judgment order. ***See*** Appellant's Brief at 23. Appellant maintains "[t]he opening of the default judgment would necessitate the reversal of the [trial c]ourt's granting of summary judgment on August 19, 2024." ***Id.*** Appellant identifies no authority governing reconsideration of summary judgment orders, but implicitly relies on the equitable principles embedded in the standard governing petitions to open, particularly the "meritorious defense" prong. ***See id.*** at 23-24. Appellant notes that summary judgment "should not be granted if there are genuine issues of material fact." ***Id.*** (citing Pa.R.C.P. 1035.2). However, Appellant does not argue that there existed genuine issues of material fact before the trial court on August 19, 2024. Rather, Appellant argues that "if [it] is allowed to present its defense, there ***will be*** numerous issues of material fact…." ***Id.*** at 23 (emphasis added); ***see id.*** at 23-24 (identifying Appellant's various defenses against summary judgment).

Our review discloses Appellant's arguments regarding the summary judgment order were not timely asserted before the trial court. This Court has held that arguments against summary judgment are waived when they are raised for the first time in a motion for reconsideration filed after the entry of summary judgment. In ***Erie Ins. Exch. v. Larrimore***, 987 A.2d 732 (Pa. Super. 2009), the appellant asserted it preserved for appeal an argument first

raised in its motion for reconsideration of an order granting summary judgment. We deemed the argument waived:

> Under Rule 302(a) of the Rules of Appellate Procedure, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). This Court has held that "arguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal." *Devine v. Hutt*, 863 A.2d 1160, 1169 (Pa. Super. 2004). Denial of reconsideration is not subject to appellate review. *Cheathem v. Temple University Hospital*, 743 A.2d 518, 521 (Pa. Super. 1999). Thus, [the] appeal here lies only from the original summary judgment [o]rder …, not from denial of reconsideration. Since the argument [raised in the motion for reconsideration] was not raised before the trial court in opposition to summary judgment, it is waived and cannot be raised for the first time on appeal.

*Erie Ins. Exch.*, 987 A.2d at 743.

Instantly, Appellant failed to raise its present arguments prior to the trial court's entry of summary judgment. Therefore, the arguments it now advances are waived.[10] *See id.* We reiterate that Appellant does not argue

---

[10] LWFI contends Appellant also waived its challenges to the summary judgment order by failing to clearly identify them in its court-ordered Pa.R.A.P. 1925(b) concise statement. *See* LWFI's Brief at 28-30. We agree. Rule 1925 provides that the concise statement "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." *Id.* (b)(4)(vii). Instantly, Appellant's concise statement does not concisely identify errors, but rather presents a seven-page argument focused on the trial court's failure to grant Appellant's Petition to Open. *See* Appellant's Pa.R.A.P. 1925(b) Statement, 10/10/24, at 1-7 (unpaginated). The statement asserts the trial court "erred in failing to grant [Appellant's] Petition to Open Default Judgment," *id.* at 1, but does not clearly identify any error relating specifically to the summary judgment order or Appellant's Motion for Reconsideration of that order. *See generally id.*

that the trial court erred when it entered the summary judgment order; rather, Appellant maintains the trial court erred in failing to grant reconsideration of that order. We again emphasize that the denial of reconsideration is not subject to appellate review. *Cheathem*, 743 A.2d at 521. In sum, Appellant has identified no grounds for relief from the summary judgment order. Consequently, we affirm the trial court's orders.

Orders affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/22/2025